# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

KONECRANES GLOBAL CORPORATION, )
)
        Plaintiff, )    Case No.: 2:18-cv-02015-GMN-NJK
vs. )
)    **ORDER**
MODE TECH (BEIJING) CO., LTD., )
)
        Defendant. )
)

    Pending before the Court is Defendant Mode Tech (Beijing) Co., Ltd.'s ("Defendant's") Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11, (ECF No. 50). Plaintiff Konecranes Global Corporation ("Plaintiff") filed a Response, (ECF No. 54), and Defendant filed a Reply, (ECF No. 55). Also pending before the Court is Defendant's Motion to Recover Damages in Excess of the Amount of Temporary Restraining Order Bond, (ECF No. 59). Plaintiff filed a Response, (ECF No. 60), and Defendant filed a Reply, (ECF No. 62). For the reasons discussed below, the Court **DENIES** Defendant's Motion for Sanctions Pursuant to Rule 11 and **GRANTS in part** and **DENIES in part** Defendant's Motion to Recover Damages in Excess of the Amount of Temporary Restraining Order Bond.

## I.   BACKGROUND

    This dispute arises from allegations that Defendant attempted to market and sell products at a trade show in Las Vegas, Nevada, which infringe upon Plaintiff's patent. The specific patent at issue is U.S. Patent No. 8,096,528 ("'528 Patent"), entitled "Chain Sprocket with Increased Capacity," issued on January 17, 2012. (*See* Compl. ¶ 6, ECF No. 1). The '528 Patent has one independent claim, Claim 1, and twenty-eight dependent claims. According to the '528 Patent abstract, the '528 Patent constitutes a chain sprocket for link chains that contains "pockets" for vertical and horizontal chain links which are separated from one another

by "teeth." ('528 Patent at 2 of 17, Ex. B to Resp., ECF No. 54-2). The purpose of the design is to maximize the transfer of force from the chain sprocket to chain links, while avoiding excessive stress on each link. (*Id.* at 11–12 of 17). The '528 Patent accomplishes that purpose through "radial teeth" that project "between adjacent chain pockets for vertical chain links" and are designed to transfer force from "the chain sprocket to the vertical chain links." (*Id.*). Relevant limitations to Claim 1 of the '528 Patent include the following:

> a plurality of teeth with each being arranged between each two adjacent second chain pockets for the vertical chain links for transmitting force from the chain sprocket to the vertical chain links, each tooth being bounded by two tooth flanks that face in a circumferential direction of the base body;
>
> at least one of the two tooth flanks of each tooth comprising a load-receiving tooth flank that faces opposite a load direction of the link chain when the chain sprocket is being used.

(*Id.* at 16 of 17).

Infringement disputes between Plaintiff and Defendant based on the '528 Patent began in 2017, when Plaintiff discovered "V6" chain hoists created by Defendant that were "a copy of [Plaintiff's] patented chain sprocket with only a couple of immaterial variances." (Compl. ¶ 11). In fact, Plaintiff secured a judgment against Defendant in 2017 through a German court based on infringement of the "European Version" of the '528 Patent. (*Id.* ¶ 12).

Plaintiff eventually learned that Defendant intended to sell infringing V6 and V6+ chain hoists ("Accused Devices") during the Live Design International ("LDI") trade show in Las Vegas, Nevada, on October 19-21, 2018. Accordingly, on October 19, 2018, Plaintiff filed with the Court its Complaint, (ECF No. 1),[1] and an Emergency Motion for Temporary Restraining Order, (ECF No. 4). The Court granted the Temporary Restraining Order ("TRO") that same day, and it temporarily restrained Defendant from producing, marketing, or selling

---

[1] Plaintiff has since amended its Complaint to add several claims for infringement of sprocket designs and mispresentation/false advertising under 15 U.S.C. § 1125(a)(1). (First Am. Compl., ECF No. 83). The Amended Complaint eliminated Plaintiff's claim for willful infringement. (*Id.*).

any products that copy or infringe the claims of the '528 Patent at the LDI trade show. (Order 3:3–20, ECF No. 9). The TRO also authorized the United States Marshal to seize products in Defendant's LDI trade show booth if they infringed on Plaintiff's '528 Patent. (*Id.* 3:22–5:22). As security for the TRO, Plaintiff posted a $1,000.00 bond pursuant to Federal Rule of Civil Procedure 65(c). (*Id.* 3:18–20).

As this litigation progressed, Defendant filed the instant Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11, (ECF No. 50), and Motion to Recover Damages in Excess of the TRO Bond, (ECF No. 59). These Motions seek to prove that Plaintiff's commencement and pursuit of this case is frivolous, and that Defendant is entitled to recover for damages associated with Plaintiff's deconstruction of several seized chain hoists.

## II. <u>LEGAL STANDARD</u>

**A. Federal Rule of Civil Procedure 11**

Federal Rule of Civil Procedure 11(b) provides, in relevant part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b). An attorney is subject to sanctions for violating the requirements of Rule 11(b). Fed. R. Civ. P. 11(c); *see Holgate v. Baldwin*, 425 F.3d 671, 675–76 (9th Cir. 2005).

Patent infringement claims are not exempt from Rule 11's requirements. For instance, "claim construction is a matter of law, so that an attorney's proposed claim construction is subject to Rule 11(b)(2)'s requirement that all legal arguments be nonfrivolous." *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012).

**B. Recovery of Bond**

Federal Rule of Civil Procedure 65(c) authorizes a court to issue preliminary injunctions or temporary restraining orders "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The purpose behind security (also referred to as "bond") is two-fold: "(1) to discourage parties from requesting injunctions based on tenuous legal grounds; and (2) to assure judges that defendants will be compensated for their damages if it later emerges that the defendant was wrongfully enjoined." *Newspaper & Periodical Drivers' & Helpers' Union, Local 921 v. San Francisco Newspaper Agency*, 89 F.3d 629, 631 (9th Cir. 1996). Accordingly, when it later turns out that "the party enjoined had the right all along to do what it was enjoined from doing," a court can reimburse the wrongfully-enjoined party with damages up to the amount of bond—provided the party sought the injunction in good faith. *See Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036, 1039 (9th Cir. 1994).

**III. DISCUSSION**

**A. Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11**

Defendant moves for the Court to sanction Plaintiff pursuant to Federal Rule of Civil Procedure 11 on the basis that Plaintiff brought frivolous patent infringement claims and failed to conduct an appropriate investigation before initiating this lawsuit. (Mot. Sanctions 1:11–15, ECF No. 50). Defendant also contends that sanctions are necessary because Plaintiff continued

to assert frivolous patent infringement claims even after discovering through improperly seized products that no infringement had occurred.

The below discussion first addresses the appropriateness of sanctions for pre-filing conduct, then turns to the reasonableness of Plaintiff's continued pursuit of its claims. However, before addressing either issue, the Court looks to whether Defendant complied with the procedural requirements of Rule 11 before moving for sanctions.

### 1) *Procedural Requirements of Rule 11*

A motion for sanctions under Rule 11 "must be made separately from any other motion . . . and must be served under Rule 5." Fed. R. Civ. P. 11(c)(2); *Potter v. Bank of Am., N.A.*, No. 2:10-CV-02095-GMN, 2013 WL 2558183, at *4 (D. Nev. June 8, 2013). Moreover, Rule 11 provides for a 21-day safe-harbor window, where the motion seeking sanctions "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2).

Plaintiff argues that Defendant failed to comply with these procedural requirements for two reasons. The first claimed error arises from Defendant providing Plaintiff with a draft of its sanctions requests that was not the exact same version as the one ultimately filed. (Resp. 9:4–10:3, ECF No. 54). The second claimed error is a violation of Rule 11's 21-day safe-harbor window. Plaintiff argues that Defendant violated the safe-harbor window by referencing the forthcoming sanctions request in its Reply in Support of a Motion to Dismiss, (ECF No. 42), filed seven days after Defendant provided Plaintiff with a draft of its Rule 11 Motion. (*Id.* 11:1–11).

Regarding Plaintiff's first argument of not being given the exact version that Defendant later filed with the Court, a recently issued decision in this District explains how there is a split among authority about whether the safe-harbor window requires the motion served and the

motion filed to be identical. *Slovak v. Golf Course Villas Homeowners' Ass'n*, No. 3:13-cv-00569-MMD-CLB, 2020 WL 929515, at *7 (D. Nev. Feb. 26, 2020) ("[T]he Ninth Circuit has yet to address this issue and there appears to be a split of authority within the district courts . . . ."). In line with this recent decision from the District, the Court declines to deny Defendant's Rule 11 Motion on the ground that the preliminary draft was not identical to the one later filed with the Court. This result is appropriate here because the ultimately-filed Motion did not include new substantive grounds for sanctions which were not in the preliminary draft.

As to compliance with the 21-day safe-harbor window, the Court finds that Defendant deviated from Rule 11(c)(2)'s restrictions by referencing the Rule 11 Motion in its Reply, (ECF No. 42). Defendant argues that its references to the forthcoming Rule 11 Motion were only to "defend[] itself" against Plaintiff's arguments about prior infringing conduct. (Reply 9:1–6, ECF No. 55). However, defending one's position on the merits differs greatly than, as Defendant itself states, presenting three pages of argument about the "essence of [its] position" in a forthcoming Rule 11 motion which will explain "in excruciating detail" why it believes Plaintiff's claims are frivolous. (*See* Reply 9:17–10:12, ECF No. 42). Indeed, presentation of argument about Rule 11 sanctions was misplaced in Defendant's Reply because the central issue to be addressed was dismissal based on insufficient service of process, not substantive merits. Nevertheless, Defendant's Reply did not request that the Court impose sanctions, nor did it present the Court with the draft motion. Considering the lack of binding authority on this specific issue, the Court exercises its discretion and declines to deny Defendant's Rule 11 Motion on procedural grounds.

### 2) *Pre-suit Investigation*

On its merits, Defendant's Motion under Rule 11 first argues that Plaintiff's pre-filing investigation was deficient, thus warranting sanctions, because "at a minimum" Plaintiff was required to "view the actual sprocket in [Defendant's] hoists before approaching this Court for

a Temporary Restraining Order, Preliminary Injunction, and accusing it of 'brazenly engag[ing] in willful patent infringement.'" (Mot. Sanctions 14:3–11). Defendant contends that if Plaintiff had done the requisite investigation, it would have discovered how Defendant now uses a sprocket without any "teeth" and no longer uses devices that resemble the '528 Patent. (*Id.* 16:21–22). Consequently, according to Defendant, "[t]his Court has little choice but to impose Rule 11 sanctions on plaintiff's counsel because counsel failed to reverse engineer or examine accused products" prior to filing the Complaint. (*Id.* 17:8–10) (internal quotations omitted).

Rule 11 does not impose a blanket standard that counsel must obtain the accused devices and dissect or reverse engineer a sample prior to initiating a patent infringement lawsuit. However, to avoid dissecting or reverse engineering an accused product, an attorney's pre-filing inquiry must be reasonable under the circumstances. *See, e.g.*, *Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1338 (Fed. Cir. 2007). For example, in *Intamin, Ltd.*, counsel conducted a sufficient pre-filing investigation without reverse engineering the accused product based on the following actions: preliminarily evaluating the patent portfolio, analyzing the patent's validity, determining the scope of the patent's claims, reviewing publicly available documents of the allegedly infringing product, inspecting the infringing product as installed, and consulting with experts as part of the infringement analysis. *See id.*; *Mad Dogg Athletics, Inc. v. Fitness Master, Inc.*, No. 2:15-cv-02616-CAS-JCGX, 2015 WL 12552047, at *3 (C.D. Cal. Sept. 28, 2015) (denying Rule 11 sanctions even though plaintiff's counsel did not obtain the allegedly infringing product because "most, if not all, of the claim limitations were discernible from a review of photographs, specifications, and user manuals of [the infringing company's] bikes"). By contrast, courts have imposed sanctions when the patentee could have easily obtained a sample of the accused device for a nominal price before filing the complaint, made no attempt to obtain a sample of the accused product, and had not closely compared the accused device with the patent claims prior to filing suit. *See Judin v. United States*, 110 F.3d

780, 784 (Fed. Cir. 1997) (finding that an attorney acted unreasonably by, among other things, "giving blind deference to his client and assuming his client had knowledge not disclosed to the attorney"). Moreover, "the presence of an infringement analysis plays the key role in determining the reasonableness of the pre-filing inquiry made in a patent infringement case under Rule 11." *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000).

Here, the Court does not find that Rule 11 sanctions are appropriate based on a deficient pre-filing investigation. According to a Declaration provided by Hannu Lindfors (the Director of Patent Management at Konecranes Global Corporation), Defendant has previously infringed on Plaintiff's European patents that are "identical in all material and relevant aspects" to the '528 Patent since 2017. (Decl. Hannu Lindfors ¶¶ 4, 6, Ex. 2 to Resp., ECF No. 54-3) (explaining that a German court found in 2017 that Defendant's "Mode V6 hoist" infringed on Plaintiff's European patent); (German Court Ruling April 27, 2017, Ex. 3 to Resp., ECF No. 54-4). Also, in 2017 Plaintiff learned that Defendant was "allegedly attempting to sell Mode V6 hoists in the United States." (Decl. Hannu Lindfors ¶ 8, Ex. 2 to Resp.). Plaintiff then consulted with experienced counsel who conducted an analysis that was "tantamount to a claim construction the Federal Circuit advises," and counsel ultimately concluded that the Mode 6 hoists "literally infringed at least claim 1 of the '528 Patent." (Decl. Richard Mescher ¶¶ 1–4, 8, Ex. 4 to Resp., ECF No. 54-5).

Later, when Plaintiff discovered in October of 2018 that Defendant signed up to sponsor a booth at the LDI trade show in Las Vegas, Plaintiff attempted to "purchase the Mode V6 or Mode V6+ hoists in the United States." (Decl. Hannu Lindfors ¶ 10, Ex. 2 to Resp.). Those purchase attempts were unsuccessful, however, because Defendant at first did not respond to the inquiry. (Decl. Jay Cid ¶ 4, Ex. 6 to Resp., ECF No. 54-7). But Plaintiff did not stop there before bringing this case. Plaintiff then reviewed Defendant's website related to the V6 hoists

in the days leading up to the trade show in Las Vegas, which showed "the sprocket for the Mode V6 hoist to be the same as the one the German court determined infringed on the [European patent]." (Decl. Hannu Lindfors ¶ 11, Ex. 2 to Resp.); (Decl. Richard Mescher ¶ 10, Ex. 4 to Resp.). Further, at the 2018 trade show in Las Vegas, Plaintiff's representative attempted to purchase Defendant's hoists, but delivery would not occur until the event concluded. (Decl. Jay Cid ¶ 5, Ex. 6 to Resp.). Only limited views of the hoists were available at that trade show. (*Id.* ¶ 5–6) (stating that it was "not possible to inspect the interior of the Mode Tech V6+ hoist models because all but two of the hoists were holding up the . . . booth" and the two other hoists were not deconstructed to reveal the interior). Those limited views nevertheless appeared to show that Defendant was continuing to infringe on the '528 Patent.

The above-described actions, in total, demonstrate a detailed effort by Plaintiff before filing the Complaint and securing the TRO[2] to discover continued infringement by Defendant on the exact products previously at issue. While Plaintiff did not deconstruct Defendant's Accused Devices before filing suit, that does not reveal sanctionable conduct in these circumstances. Plaintiff's pre-suit investigations resemble the reasonable efforts described in *Intamin Ltd.*, 483 F.3d at 1338, rather than the deficient, ignorant conduct in *Judin*, 110 F.3d at 784. The Court accordingly declines to impose Rule 11 sanctions based on Plaintiff's pre-suit investigation.

### 3) *Continuation of the Lawsuit*

Aside from obligations at the pre-filing stage, Rule 11 also imposes a duty to not continue the pursuit of infringement claims after it becomes obvious that the claims are baseless. *Cf. Phonometrics, Inc. v. Econ. Inns of Am.*, 349 F.3d 1356, 1364 (Fed. Cir. 2003) (affirming sanctions under Rule 11 when the patentee's counsel continued to prosecute

---

[2] The Court addresses whether Plaintiff should nevertheless forfeit its $1,000.00 bond posted for the TRO in the below discussion of *Section B*.

infringement claims even after adverse rulings by the Federal Circuit regarding the same patent and patentee); *Turner v. Sungard Bus. Sys., Inc.*, 91 F.3d 1418, 1422 (11th Cir. 1996) (awarding Rule 11 sanctions because counsel "had to know that the case was without a factual basis but failed to dismiss it, thereby forcing [the opposing party] (and the court) to expend time and money on a summary judgment motion"). The baselessness of patent infringement claims is most often apparent after claim construction and at the summary judgment stage. *See, e.g.*, *Rothschild Digital Media Innovations, LLC v. Sony Computer Entm't Am. LLC*, No. 5:14-cv-03928-PSG, 2015 WL 1522369, at *2 (N.D. Cal. Apr. 2, 2015). During that timeframe, sanctions under Rule 11 are appropriate when a plaintiff's claim construction and infringement accusations are so objectively unreasonable "that no reasonable litigant could believe it would succeed." *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012).

Here, Defendant seeks sanctions against Plaintiff before a *Markman* hearing and before the completion of briefing on claim construction. Defendant's central argument for sanctions is that the Accused Devices lack the "tooth configuration" which is essential to the '528 Patent—and that Plaintiff would have discovered this fact upon seizing the devices with its temporary restraining order and deconstructing them during litigation.[3] Yet Plaintiff continued with its claims. Defendant thus argues for sanctions based on Plaintiff's continued prosecution of this

---

[3] One aspect to Defendant's request for Rule 11 sanctions is that Plaintiff would have immediately discovered how the Accused Devices do not infringe on the '528 Patent upon seizing hoists at the 2018 Las Vegas trade show and deconstructing them pursuant to the Court's TRO. Thus, according to Defendant, Plaintiff's continued prosecution of this case is frivolous. As support for this argument, Defendant cites to Plaintiff's Withdrawal of the Motion for Preliminary Injunction, which states, "in the process of completing its inspection of the fourteen Mode Tech hoists seized pursuant to the Order. . . . the few hoists that [Plaintiff] has inspected do not appear to show that Mode Tech has infringed the '528 Patent." (Notice Withdrawal 2:4–7, ECF No. 23). The Court, however, does not find that Plaintiff's conduct after its Withdrawal Notice warrants Rule 11 sanctions. Plaintiff conducted extensive, reasonable efforts when deciding to continue with its claims after the Withdrawal Notice, such as consulting with experts and experienced attorneys while fully analyzing the seized products. (Decl. David P. Shouvlin ¶¶ 13–15, ECF No. 54-14). Of course, whether Plaintiff should forfeit its bond for securing a temporary restraining order and seizing Defendant's hoists under these circumstances is a different issue—one discussed later in this Order.

action with knowledge that it could take no reasonable claim construction position to prove patent infringement. In response, Plaintiff contends that the sanctions request is premature before claim construction; and, even if it were not, its claim construction position is reasonable.

Addressing first Plaintiff's argument that an analysis of sanctions is premature, the Court finds that it can analyze Defendant's sanctions request even though it arises before a *Markman* hearing and before full briefing on claim construction. In the context of requests for sanctions before a *Markman* hearing, "case law . . . suggests that Rule 11 sanctions . . . are only warranted when a proposed claim construction is 'wholly unsupported' by intrinsic evidence." *Rothschild Digital Media Innovations, LLC*, No. 5:14-cv-03928-PSG, 2015 WL 1522369, at *3. In other words, to avoid Rule 11 sanction at a pre-*Markman* hearing stage, the Court's review is to determine if Plaintiff's position is frivolous by not conforming with the standard canons of claim construction and not being reasonably supported by the intrinsic record. *See Syneron Med. Ltd. v. Viora Ltd.*, No. 2:14-CV-00639, 2014 WL 7140643, at *5 (E.D. Tex. Dec. 12, 2014).

In pursuing sanctions here, Defendant focuses on the words "tooth" and "teeth" as stated in Claim 1 of the '528 Patent. According to Defendant, "tooth" or "teeth" are essential to the '528 Patent, and the terms hold a simple definition in the "art of chain sprockets": "a shaped structure projecting from a surface." (Mot. Sanctions 12:24–25) (contending that, when also looking to extrinsic sources, "tooth" in this context "means a structure that projects above the surface of a wheel-shaped sprocket."). Defendant declares that its Accused Devices lack any "tooth configuration" because "there are no projections above the surface of the sprocket." (*Id.* 13:2–11, 14:16–18) (arguing that "proffering a claim construction for a claim that requires a sprocket to have teeth in a way to cover a sprocket that has no teeth is objectively unreasonable."). Moreover, according to Defendant, the absence of "teeth" is not an

"insubstantial" difference that could support Plaintiff's infringement claim even under the doctrine of equivalents. (*Id.* 13:13–20).

Plaintiff responds that no limitation of the '528 Patent requires that teeth be of a certain size or height, nor that they need to project outward from an outermost surface. (Resp. 17:21–18:1). Rather, according to Plaintiff, "tooth" as used in the '528 Patent merely means "a structure that projects from the surface forming a cavity between adjacent ones of the structure." (*Id.* 19:23–25). Plaintiff adds that "tooth" or "teeth" refers to the structure that is sized and shaped "for transmitting force from the sprocket to the vertical chain link." (*Id.* 17:21–18:9). Thus, according to Plaintiff, the Accused Devices have "teeth" in that a component projects from the "bottom surfaces" of the "pockets" which receive the vertical chain links and transmits "force from the sprocket to the vertical chain links." (*Id.* 18:21–19:2).

With the parties' conflicting interpretations, the Court's present task is not to determine which is correct. Its task is to determine whether Plaintiff proffers a wholly unreasonable claim construction that is contrary to standard canons in light of the intrinsic record. *See Syneron Med. Ltd.*, No. 2:14-CV-00639, 2014 WL 7140643, at *4 (citing *Raylon, LLC*, 700 F.3d at 1368). Under that low standard, the Court does not find that sanctions are appropriate based on Plaintiff's continued pursuit of its patent infringement claims.

Plaintiff's proffered construction at least aligns with the limitations and description of Claim 1 of the '528 Patent.[4] *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1360 (Fed. Cir. 2004) ("In most cases, the best source for discerning the proper context of claim terms is the patent specification . . . ."). Neither the limitation nor description of Claim 1 states "tooth" or "teeth" must protrude any particular height into a horizontal chain. The description and limitations instead focus on "tooth" or "teeth" as the component which arises

---

[4] Defendant points out that there is no prosecution history to shed additional light on the meaning of "teeth" or "tooth" based on the '528 Patent. (Mot. Sanctions 12:13–15).

from the lower-most point of a cavity for vertical chain links and which permits force to be applied to a vertical chain link. (*See* '528 Patent at 16 of 17, Ex. B to Mot. Sanctions, ECF No. 50-2) ("[A] plurality of teeth with each being arranged between each two adjacent second chain pockets for the vertical chain links . . . ."). The Court recognizes how portions of the '528 Patent description appear in tension with Plaintiff's proffered construction of "tooth" with respect to the infringement claims. For example, several provisions in the description explain that a "tooth" projects "radially above the surfaces (38)," and one provision discusses a reference plane as "the tangential plane at the lower flank surface of the horizontal chain link *through which tooth (36) projects*." (*Id.* at 14–15 of 17) (emphasis added) (discussing the "favorable values for the height of the tooth (36) . . . measured as the distance between a plane and the tooth tip"). But other provisions in the '528 Patent description again cut toward Plaintiff's position: that "no limitation . . . requires a specific height for the teeth other than the teeth need to be sized and shaped 'for transmitting force from the sprocket to the vertical chain link.'" (Resp. 17:27–18:1); (*see* '528 Patent at 15–16, Ex. B to Mot. Sanctions) ("The chain pockets for the vertical chain links are separated from one another by teeth."); (*id.* at 15) ("The height of each tooth (36) is subject to the conflicting priorities of good running characteristics of the chain (8) and maximization of the rotational path along which force is transferred between the chain sprocket and the vertical chain link."). And when looking to the Accused Devices under Plaintiff's proffered construction of the limitations of Claim 1, Plaintiff's literal infringement theory is not objectively unreasonable. Defendant's product includes cavities for vertical chain links with intervening projections which permit the exertion of force from the sprocket to the vertical chain links. (*See* Resp. at 20, ECF No. 54) (depicting the Accused Devices with labels to demonstrate how the '528 Patent's limitations could align with the Accused Devices' structure).

Because Plaintiff's proffered claim construction position is not objectively unreasonable

considering the limitations and description of Claim 1 of the '528 Patent, nor is its position "contrary to all the intrinsic evidence," the Court cannot yet declare that Plaintiff's continued prosecution of this case is frivolous and warranting Rule 11 sanctions. *See Rothschild Digital Media Innovations, LLC*, No. 5:14-cv-03928-PSG, 2015 WL 1522369, at \*4 ("With such a wide yet reasonable divide in constructions between the parties—each drawing support from the [Order Confirming Validity]—the court cannot yet say that this case is frivolous. A *Markman* hearing and full claim construction is required.").

### B. Motion to Recover Damages in Excess of the Amount of TRO Bond

The next issue before the Court is whether Defendant should receive the $1,000.00 bond that Plaintiff posted when securing its TRO. Also, in addition to bond, Defendant seeks actual damages by claiming that Plaintiff acted in bad faith when moving for its *ex parte* TRO. Actual damages, according to Defendant, amount to $4,038.00 based on harm caused to several hoists when Plaintiff seized them at the 2018 LDI trade show and deconstructed them.

District courts have found that forfeiture of bond is appropriate when a temporary restraining order is extinguished and the corresponding request for a preliminary injunction is denied. *See, e.g.*, *Qualcomm, Inc. v. Motorola, Inc.*, 185 F.R.D. 285, 288 (S.D. Cal. 1999). The reasoning behind this straight-forward approach is that a party's failure to carry its burden at the preliminary injunction stage supports the conclusion that temporary enjoinment by restraining order had been wrongful. *See id.* ("When a court denies a preliminary injunction after it has granted a contested TRO, the restrained party has been 'wrongfully restrained,' given that a TRO is only intended to last until a preliminary injunction hearing is held."); *Pollution Denim & Co. v. Pollution Clothing Co*., No. CV0705208MMMJWJX, 2007 WL 9657289, at \*3 (C.D. Cal. Nov. 5, 2007). However, other courts have hesitated to relinquish bond before a full decision on the merits of the case. *Valeant Pharm. Int'l v. Leavitt*, No. SACV08449AGAGRX, 2008 WL 11342839, at \*2 (C.D. Cal. Aug. 11, 2008). The rationale in

1  *Valeant* was that, prior to a final resolution, the plaintiff "still has a possibility of winning the
2  case" and proving that the defendant had no right to sell its product. *Id.*

3  Here, Defendant is entitled to the $1,000.00 bond posted by Plaintiff when securing its
4  TRO. The relevant facts supporting this conclusion start with Plaintiff's decision to move for
5  an emergency injunction before comprehensively inspecting the exact devices to be seized.
6  Further, Plaintiff sought that immediate injunction on an *ex parte* basis prior to the 2018 LDI
7  trade show concluding its first day (of several)—thus depriving Defendant from a chance to
8  respond and demonstrate that its devices at the Las Vegas trade show would not be the same
9  ones previously found to infringe on Plaintiff's European patents. (*See* Order Granting TRO
10 3:3–9, ECF No. 9); (*Ex Parte* Mot. TRO, ECF No. 4) (filed on October 19, 2018). Though
11 Plaintiff based its quick actions on Defendant's prior infringement activity and circumstantial
12 evidence supporting continued infringement, the evidence did not conclusively foreclose the
13 possibility that Defendant would be presenting different V6 and V6+ hoists than before.  Later
14 discovered facts then show that Defendant at least had a right to appear at the 2018 LDI trade
15 show, and that Defendant should not have been enjoined on an *ex parte* status prior to that trade
16 show's conclusion. *See Pollution Denim*, No. CV-0705208-MMM-JWJX, 2007 WL 9657289,
17 at *3 (finding the defendant was wrongfully restrained based on the fact that the motion for
18 preliminary injunction was not granted, which "indicate[d] that defendants had a right to attend
19 the trade show using the 'Pollution Clothing' mark"). Indeed, Plaintiff's own statements
20 support Defendant being wrongfully restrained from appearing at the trade show. (Withdrawal
21 Notice 2:5–8, ECF No. 23) (explaining that "[t]hus far, the few hoists that Konecranes has
22 inspected do not appear to show that Mode Tech has infringed the '528 Patent," and requesting
23 that "the present Motion for Preliminary Injunction be withdrawn at this time.").

24 As to the computation of damages associated with wrongful restraint, Plaintiff does not
25 contest that its seizure and deconstruction of Defendant's hoists resulted in at least $1,000.00 of

damage. Accordingly, forfeiture of the full $1,000.00 bond to Defendant is appropriate and aligns with the policy of assuring "that defendants will be compensated for their damages if it later emerges that the defendant was wrongfully enjoined." *Newspaper & Periodical Drivers' & Helpers' Union, Local 921*, 89 F.3d at 631. Defendant is not, however, entitled to $4,038.00 in compensatory damages that exceed the posted bond. As explained previously in this Order, the Court does not find that Plaintiff acted in bad faith by bringing this action or continuing to pursue its claims. *Cf. Nintendo of Am., Inc.*, 16 F.3d at 1036 ("[T]here is a rebuttable presumption that a wrongfully enjoined party is entitled to have the bond executed and recover provable damages *up to the amount of* the bond.") (emphasis added).

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Sanctions Pursuant to Rule 11, (ECF No. 50), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Recover Damages in Excess of the Amount of TRO Bond, (ECF No. 59), is **GRANTED in part** and **DENIED in part**. Plaintiff's bond of $1000.00 deposited with the Court as security for a temporary restraining order, (Certificate of Cash Deposit, ECF No. 12), is deemed forfeited to Defendant.

**DATED** this __24__ day of March, 2020.

_____
Gloria M. Navarro, District Judge
United States District Court